## WOODSON v. STATE.

### Opinion delivered January 30, 1928.

1. INTOXICATING LIQUORS—EVIDENCE OF MAKING MASH.—In a prosecution for making mash fit for the manufacture of distilled spirits, evidence based on finding of barrels of mash in defendant's house *held* sufficient to sustain a conviction.

2. CRIMINAL LAW—EVIDENCE OBTAINED THROUGH UNLAWFUL SEARCH.—Evidence of defendant's violation of the liquor law by making mash, obtained by unlawful search of defendant's premises without a search warrant, in violation of State and Federal Constitutions, *held* competent and relevant to prove guilt; the admissibility of evidence not being affected by the illegality of the means by which it was obtained.

Appeal from Lee Circuit Court; *W. D. Davenport*, Judge; affirmed.

*F. P. Fitzsimmons* and *Griffin Smith*, for appellant.

*H. W. Applegate*, Attorney General, and *Darden Moose*, Assistant, for appellee.

MEHAFFY, J. The appellant, Sidney Woodson, was indicted by the Lee County grand jury on April 7, 1926,

charged with making and fermenting mash fit for the manufacture of distilled spirits, etc.

Z. C. Smith, the sheriff of the county, testified that, acting on information that the defendant was·making whiskey, he went to his residence to arrest him, and approached by way of the kitchen, the door of which was open. That there were two fifty-gallon barrels of mash and possibly two or three smaller barrels against the wall of the kitchen.

Appellant objected to this testimony, the objection was overruled, and exception saved.

Witness said the fifty-gallon barrels were full of mash, the kind used for making whiskey; that appellant at that time was fifty or a hundred yards away, cutting corn or cotton stalks. Witness was accompanied by his deputy, Mr. Clay, who started to arrest the defendant. The defendant escaped arrest. Witness had a warrant for defendant's arrest from the time the indictment was returned until the arrest was actually made. Defendant was first arrested "just a short time ago; around four or five weeks ago." Witness did not have a search warrant to search the premises, and did not have a warrant for the arrest of the defendant. The stuff was in the kitchen, and he could not tell what was in the barrels until he went into the house. When the witness saw the mash, defendant was cutting stalks. When they saw what they thought was mash, Clay went out to arrest defendant, and then they.went into the house and poured the stuff out and found that it was mash.

On cross-examination witness said he could not tell what was in the barrels until he went into the house. Did not find any whiskey.

The evidence offered by the defendant tended to show that what they found was not mash, and the defendant himself testified that he was out cutting cornstalks, and the first knowledge he had of the presence of the officers was when Mr. Clay came out and asked him if he lived up there. When·defendant answered "Yes," Mr. Clay said, "Come on up here." Witness told him all

right, and went down to the lower end, and intended to go back to the house, and looked back, and the deputy had run about 30 or 40 yards with a pistol in his hand. Witness said he did not know who it was, and, for that reason, he ran. He was gone about an hour before he came back. He stayed there, and helped make and plant a crop, and helped pick it. He left home the 7th day of August and came back the 23d of September. He testified that the containers in the house were used for holding slop. That he had purchased some bran and chops from Mr. McClintock; that he had four hogs; that there was no sugar in the mixture, nor syrup.

Appellant contends that the evidence obtained by an unlawful search of his house should have been excluded, and this was the only evidence tending to show that there was mash in the barrels. If this evidence was properly admitted, it was sufficient to justify a verdict of conviction.

A majority of the court is of the opinion that, although defendant's constitutional rights were violated, this court would not take notice of the manner in which witness obtained the evidence; that it was competent and relevant, although obtained in violation of the Constitution of the State of Arkansas and the Constitution of the United States.

Mr: Justice SMITH, Mr. Justice McHANEY and the writer do not agree to this, but they believe, as held by the United States Supreme Court in *Marron* v. *United States,* 275 U. S. 192, 48 S. Ct. 74, 72 L. ed., that the effect of the Constitution is to put the courts in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects, against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted with the enforcement of the laws.

But, as we have said, the majority of the judges are of opinion that this case is controlled, so far as the admissibility of this evidence is concerned, by the case of *Benson* v. *State,* 149 Ark. 633, 233 S. W. 758, in which the court said:

"Tisdell made the search without a warrant or other process from any court especially authorizing him so to do. It is insisted therefore that, as the search was illegally made, any evidence of guilt thus discovered was inadmissible in evidence. The authorities are against appellant on this proposition. Without inquiring or deciding what right Tisdell had to search appellant's premises, it suffices to say that the evidence of appellant's guilt thus discovered is not rendered inadmissible because Tisdell may have been a trespasser.   *   *   *   For these reasons it has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence. The illegality is by no means condoned, it is merely ignored."

The court then cites numerous authorities, including *Starchman* v. *State,* 62 Ark. 238, 36 S. W. 940, 8 R. C. L. 96, 24 R. C. L., § 22, 10 R. C. L., § 97.

It is useless to review the authorities further, the only question being whether evidence obtained by an unlawful search is admissible, and, as a majority of the judges hold that it is, the evidence is sufficient to sustain the verdict, and the judgment is therefore affirmed.